IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| LIVE OAK BANKING COMPANY, | ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| BURKE VENTURES LLC; | ) | |
| NICKOLAS S. BURKE; and DAWN | ) | |
| M. BURKE, | ) | |
| | ) | |
| Defendants. | ) | |

Live Oak Banking Company ("<u>Live Oak</u>" or "<u>Plaintiff</u>"), for its Complaint against defendants Burke Ventures LLC ("<u>Burke</u>"), Nickolas S. Burke ("<u>Nickolas</u>"), and Dawn M. Burke ("<u>Dawn</u>," and together with Burke and Nikolas, the "<u>Defendants</u>"), states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Live Oak is a North Carolina state-chartered bank with a principal place of business in Wilmington, North Carolina.

2.      Defendant Burke is a Wisconsin limited liability company with its principal place of business in Madison, Wisconsin, doing business as "Go Mini of Madison." It can be served via its registered agent Nickolas Burke, 25 Maple Grove Ct., Madison, WI 53719. Burke has two members: Defendants Nickolas and Dawn, both of whom are citizens of the State of Wisconsin.

3.      Defendant Nickolas is an individual domiciled in the State of Wisconsin at 25 Maple Grove Ct., Madison, WI 53719.

Case: 3:25-cv-00773    Document #: 1    Filed: 09/12/25    Page 2 of 15

4.     Defendant Dawn is an individual domiciled in the State of Wisconsin at 25 Maple Grove Ct., Madison, WI 53719.

5.     This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.  There is complete diversity of citizenship between the Plaintiff, on the one hand, and Defendants, on the other hand. State chartered banks, like Live Oak, are considered citizens of their state of incorporation and the state where it has its principal place of business. Live Oak is therefore a citizen of North Carolina, which is both the state that chartered its organization and its principal place of business.  Limited liability companies like Burke are citizens of all of the domiciles of their members.  Burke has two members: Defendants Nickolas and Dawn, both of whom are domiciled in the State of Wisconsin.   Thus, the citizenship of all Defendants is Wisconsin.  Accordingly, there is complete diversity of citizenship between the parties because Plaintiff is a citizen of North Carolina and Defendants are all citizens of Wisconsin.

6.     This Court has specific personal jurisdiction insofar as this case arises out of Defendants' contacts in Wisconsin, including, but not limited to, entering into a loan agreement in Wisconsin that required Defendants to perform their obligations under that agreement – including the receipt of loaned funds, repaying loaned funds, and providing security for the loans – in the State of Wisconsin, and Defendants breached those obligations in Wisconsin. This Court also has general personal jurisdiction over Defendants because Burke is a Wisconsin entity with its principal place of business in Wisconsin,

2

Nickolas and Dawn are residents of Wisconsin, and Defendants have conducted – and, on information and belief, continue to conduct – business in this state. Among other things, Defendants entered into contracts in Wisconsin that called for performance in Wisconsin. Further, Defendants have operated a portable storage business in the State of Wisconsin, which involves providing storage services for Wisconsin residents.

7.    Venue for this case is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants are residents within the Western District of Wisconsin and because all or a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Wisconsin. Among other things, Defendant Burke contractually agreed to accept a loan, use the loan proceeds, and make loan repayments in the Western District of Wisconsin; and Defendants Nickholas and Dawn agreed to guarantee a loan in the Western District of Wisconsin. Defendants also failed or refused to comply with their contractual obligations in the Western District of Wisconsin, and Defendants caused damages in the Western District of Wisconsin.

## FACTUAL BACKGROUND

### A.    The Loan Documents

####     i.    *The Loan Agreement*

8.    On or about November 16, 2021, Burke, as borrower, and Nickolas and Dawn, as guarantors, executed a loan agreement in favor of Live Oak (the "Loan Agreement"), wherein Live Oak agreed to lend, and Burke agreed to borrow the original principal amount of $625,000, pursuant to the terms and conditions of the Loan Agreement. Further, Nickolas and Dawn, as guarantors, also agreed to be bound by the terms and

conditions of the Loan Agreement. A true and correct copy of the Loan Agreement is attached as **Exhibit 1**.

9.      To secure repayment, Article VII of the Loan Agreement grants to Live Oak a purchase money security interest in all of Burke's containers acquired with the loan proceeds and a first priority security interest of all of Burke's rights, title, and interest in and to each of the following, wherever located and existing now or hereafter acquired: (a) all accounts receivable; (b) all inventory; (c) all equipment; (d) all furniture and trade fixtures; (e) all instruments; (f) all chattel paper; (g) all contract rights; (h) all general intangibles; and (i) all deposit accounts. Live Oak's security interest is further memorialized in the separate Security Agreement.

10.     Article V of the Loan Agreement provides that any one or more of the following would constitute an Event of Default: (a) the failure to make payment when due; (b) the failure to observe or perform any term of the Loan Agreement, the Note, or any other loan document; (c) the borrowers were unable to pay debts as they come due; (f) the borrowers suffer or permits any lien, encumbrance or security interest to attach to its property; and/or (g) borrowers default in the payment of any principal or interest on any obligation to Live Oak.

11.     Article V further provides that upon the occurrence of any Event of Default, Live Oak "shall give written notice to Borrower of a monetary default hereunder, and Borrower shall have a period of ten (10) days thereafter to cure such monetary default . . . [and Live Oak] shall give written notice to Borrower of any non-monetary default

CORE/3505040.0020/231361866.3

hereunder and Borrower shall have a period of third (30) days thereafter to cure such non-monetary default[.]"

12.     Section 6.1 of the Loan Agreement provides that "[u]pon the occurrence of any Event of Default . . . [Live Oak] at its option, may declare the entire unpaid balance of the Note to be forthwith due and payable, and thereupon such balance shall become so due and payable without presentment, protest or further demand or notice of any kind, all of which are hereby expressly waived, and Borrower[s] will forthwith pay to [Live Oak] the entire principal of and interest accrued on the Note."

13.     In addition, Section 6.2 of the Loan Agreement provides Live Oak with the option to "[m]ove to protect its rights and remedies as a secured party under the Security Agreement, by extrajudicial authority as set forth in that instrument, by action at law or equity, or by any other lawful remedy to enforce payment."

14.     Section 6.2 of the Loan Agreement further provides that the Defendants agreed to pay attorneys' fees and costs related to and in connection with the Note and any collection of the Note and with regards to protection, repossession, and selling the Collateral.

*ii.     The Note*

15.     Among other things, Section 1.1 of the Loan Agreement provides that the indebtedness under the Loan Agreement would be governed by a note in the original principal amount of $625,000.

16.     Contemporaneous with execution of the Loan Agreement, Burke executed a U.S. Small Business Administration Note on or about November 16, 2021, in the principal

amount of $625,000.00 (the "Note"), setting forth, among other things, the terms of repayment. A true and correct copy of the Note is attached as **Exhibit 2.**

17.     As set forth in the Note, Burke was required to make a total of 18 monthly payments of interest only, beginning two months from the date of the Note and due on the fifth of each month. Burke was then required to make monthly payments of interest and principal in the amount of $5,393.46 beginning 20 months from the date of the Note, with those payments due on the 5th day of each month. Live Oak is further entitled to charge a late fee of up to 4% of the unpaid portion of the monthly payments.

18.     It is a default pursuant to Paragraph 4 of the Note if Burke (i) fails to make a payment when due, (ii) fails to do anything required under the Note or other Loan Documents; (iii) fails to preserve, or account to Live Oak's satisfaction for, any of the Collateral or its proceeds; (iv) fails to disclose any material fact to Live Oak or the Small Business Administration ("SBA"); (v) defaults on any agreement with another creditor, if Live Oak believed the default may materially affect the borrower's ability to pay the Note; (vi) fails to pay any taxes when due; (vii) has any adverse change in financial condition or business operation; and/or (viii) becomes the subject of a civil or criminal action that Live Oak believes may materially affect the borrower's ability to pay the Note.

19.     In the event of a default, Paragraph 5 of the Note authorizes Live Oak to, with or without notice or demand, (a) require immediate payment of all amounts owing under the Note; (b) collect all amounts owing from any borrower or guarantor; (c) file suit and obtain judgment; (d) take possession of any collateral; and/or (e) sell, lease, or otherwise dispose of any collateral.

20.     Pursuant to Paragraph 6 of the Note, Live Oak has the power to incur expenses to collect amounts due under the Note, enforce the terms of the Note or other loan documents, and preserve or dispose of collateral.   Those expenses included payment for reasonable attorney's fees and costs.   If such expenses were incurred, Live Oak is entitled to demand immediate repayment and add the expenses to the loan's principal balance.  Live Oak is also entitled to "[t]ake any action necessary to protect the Collateral or collect amounts owing on this Note."

   *iii.* *The Security Agreement*

21.     To secure repayment of the amounts owing under the Note, Burke executed a U.S. Small Business Security Agreement dated November 16, 2021 in favor of Live Oak (the "Security Agreement") granting to Live Oak a purchase money security interest in all containers acquired with the loan proceeds and a security interest in the following property of Burke, whether now owned or hereafter acquired, and as more fully described Exhibit A to the Security Agreement: (a) equipment; (b) trade fixtures; (c) inventory; (d) accounts; (e) instruments; (f) chattel paper; (g) general intangibles; (h) documents; (i) deposit accounts (collectively, the "Collateral"). A true and correct copy of the Security Agreement is attached as **Exhibit 3**.

22.     The Live Oak's security interest in the Collateral was perfected by filing (i) a UCC-1 Financing Statement, filed on November 16, 2021, with the Wisconsin Secretary of State as Filing Number 20211117000349-9; and (ii) with respect to its purchase money security interest in containers, a UCC-1 Financing Statement filed January 11, 2022, with the Wisconsin Secretary of State as Filing Number 20220112000044-4 and a UCC-1

Financing Statement filed February 28, 2022, with the Wisconsin Secretary of State as Filing Number 20220228000328-3 (collectively the (the "<u>UCC Financing Statements</u>"). True and correct copies of the UCC Financing Statements are attached as **<u>Exhibit 4</u>**.

      *iv.*    *The Guarantees*

      23.    In addition to the Security Agreement, and to further secure repayment of the amounts owing under the Note, Defendants Nickolas and Dawn executed U.S. Small Business Administration Unconditional Guarantees, both dated November 16, 2021 (respectively the "<u>Nickolas Guarantee</u>" and the "<u>Dawn Guarantee</u>" and together the "<u>Guarantees</u>").

      24.    Under the Guarantees, both Nickolas and Dawn unconditionally guaranteed payments to Live Oak of all amounts due and owing under the Note. Paragraph 1 of the Guarantees provides that Live Oak is not required to seek payment from any other source before demanding payment from Nickolas and/or Dawn. True and correct copies of the Guarantees are attached as **<u>Exhibit 5</u>**.

      25.    The Loan Agreement, the Note, the Security Agreement, the UCC Financing Statement, and Guarantees are hereinafter referred to as the "<u>Loan Documents</u>".

**B.**    **Events of Default**

      26.    On June 23, 2025, counsel for Live Oak sent each of the Defendants a notice of default (the "<u>Default Notices</u>"), notifying Defendants that they were in default under the Note by failing to make all required payments from April 5, 2024, forward, and demanding immediate payment of the total outstanding sums overdue under the Note, plus accruing

interest and late fees.  True and correct copies of the Default Notices are attached as **Exhibit 6.**

27.     Defendants have failed to cure their default, and Defendants are therefore in default under the Loan Documents for failing to make payment when due to Live Oak.

28.     As of August 25, 2025, the Defendants were indebted to Live Oak in the following amounts: $536,854.46 in principal, $69,939.76 in accrued interest, and $4,165.40 in late charges, for a total of $610,959.62, plus interest accruing thereafter, and plus fees, costs, and attorneys' fees incurred (collectively, the "Indebtedness").

## COUNT I
## BREACH OF CONTRACT
### (As to Burke)

29.     Live Oak incorporates the preceding paragraphs as though fully set forth herein.

30.     The Loan Documents were duly authorized, executed, and delivered by Burke, and are legal and binding obligations of Burke, and are enforceable against Burke in accordance with their respective terms.

31.     Burke is in default under the terms and conditions of the Loan Documents, including the Note and Loan Agreement, as more particularly described above.

32.     Burke's payment and performance obligations under the Loan Documents, including payment of the Note and Loan Agreement, are absolutely and unconditionally due and payable in full, and there exists no right of setoff or recoupment, nor any counterclaims or defenses of any nature whatsoever, to the full payment of the obligations or the exercise and enforcement of Burke's rights under the Loan Documents.

33. Live Oak has given all required notices under the Loan Documents to Burke.

34. Burke has failed to perform the obligations in the Loan Documents as identified herein by, among other things, failing to make payment to Live Oak as and when required under the terms of the Loan Documents.

35. All conditions precedent to Burke's obligations pursuant to the Loan Documents have occurred and Live Oak has complied with the terms of the Loan Documents.

36. Burke's defaults pursuant to the Note, Loan Agreement, and other Loan Documents have caused Live Oak damages, and Burke is therefore liable to Live Oak, jointly and severally, as of August 25, 2025, in the total amount of $610,959.62, plus interest accruing thereafter, and plus fees, costs, and attorneys' fees incurred.

## COUNT II
## BREACH OF GUARANTEE
### (As to Nickolas)

37. Live Oak hereby incorporates the preceding paragraphs as though fully set forth herein.

38. Based on the default, the entire Indebtedness became due and owing from Nickolas to Live Oak

39. Live Oak relied on the Nickolas Guarantee in advancing the sums set forth in the Loan Documents to Defendants and accordingly, Live Oak has satisfied all conditions precedent.

CORE/3505040.0020/231361866.3

40.     Live Oak has incurred and will continue to incur attorneys' fees and collection costs in the collection of the Indebtedness and enforcement of the Live Oak's rights and remedies under the Loan Documents, including the Nickolas Guarantee.

41.     As of August 25, 2025, Nickolas is indebted under the Nickolas Guarantee in the amount of the Indebtedness.

42.     Nickholas has failed, refused, or otherwise neglected to pay the Indebtedness due under the Nickolas Guarantee.

43.     As a direct and proximate result of Nickholas' failure to repay the amounts due under the Nickolas Guarantee, Nickolas is liable to Live Oak, jointly and severally, in the amount equal to the Indebtedness, which is a total amount of, as of August 25, 2025, $610,959.62, plus interest accruing thereafter, and plus fees, costs, and attorneys' fees incurred.

**COUNT III**
**BREACH OF GUARANTEE**
**(As to Dawn)**

44.     Live Oak hereby incorporates the preceding paragraphs as though fully set forth herein.

45.     Based on the default, the entire Indebtedness became due and owing from Dawn to Live Oak

46.     Live Oak relied on the Dawn Guarantee in advancing the sums set forth in the Loan Documents to Defendants and accordingly, Live Oak has satisfied all conditions precedent.

47.    Live Oak has incurred and will continue to incur attorneys' fees and collection costs in the collection of the Indebtedness and enforcement of Live Oak's rights and remedies under the Loan Documents, including the Dawn Guarantee.

48.    As of August 25, 2025, Dawn is indebted under Dawn Guarantee in the amount of the Indebtedness.

49.    Dawn has failed, refused, or otherwise neglected to pay the Indebtedness due under the Dawn Guarantee.

50.    As a direct and proximate result of Dawn's failure to repay the amounts due under the Dawn Guarantee, Dawn is liable to Live Oak, jointly and severally, in the amount equal to the Indebtedness, which is a total amount of, as of August 25, 2025, $610,959.62, plus interest accruing thereafter, and plus fees, costs, and attorneys' fees incurred.

## COUNT IV
## ALTERNATIVE COUNT- UNJUST ENRICHMENT
### (As to Burke)

51.    Live Oak hereby incorporates the preceding paragraphs as though fully set forth herein.

52.    Live Oak advanced Burke certain amounts as loans, as evidenced by the Loan Documents, which Burke accepted and acknowledged as debt obligations due and owing to Live Oak.

53.    Despite Burke's promise to repay the Indebtedness, Burke has failed to repay the Indebtedness to Live Oak.

54.    Live Oak has demanded payment from Burke under the Loan Documents, but Burke has failed and refused to make the required payments.

CORE/3505040.0020/231361866.3

55.     As a result, Burke is jointly and severally liable to Live Oak for the Indebtedness, which is a total amount of, as of August 25, 2025, $610,959.62, plus interest accruing thereafter, and plus fees, costs, and attorneys' fees incurred.

**COUNT V**
**ALTERNATIVE COUNT- UNJUST ENRICHMENT**
**(As to Nickolas)**

56.     Live Oak hereby incorporates the preceding paragraphs as though fully set forth herein.

57.     Live Oak advanced Burke certain amounts as loans, as evidenced by the Loan Documents, which Nickolas personally guaranteed repayment to Live Oak and accepted and acknowledged as debt obligations due and owing to Live Oak.

58.     Despite Nickolas' promise to repay the Indebtedness, Nickolas has failed to repay the Indebtedness to Live Oak.

59.     Live Oak has demanded payment from Nickolas under the Loan Documents, but Nickolas has failed and refused to make the required payments.

60.     As a result, Nickolas is jointly and severally liable to Live Oak for the Indebtedness, which is a total amount of, as of August 25, 2025, $610,959.62, plus interest accruing thereafter, fees, costs, and attorneys' fees incurred.

**COUNT VI**
**ALTERNATIVE COUNT- UNJUST ENRICHMENT**
**(As to Dawn)**

61.     Live Oak hereby incorporates the preceding paragraphs as though fully set forth herein.

13

62.     Live Oak advanced Burke certain amounts as loans, as evidenced by the Loan Documents, which Dawn personally guaranteed repayment to Live Oak and accepted and acknowledged as debt obligations due and owing to Live Oak.

63.     Despite Dawn's promise to repay the Indebtedness, Dawn has failed to repay the Indebtedness to Live Oak.

64.     Live Oak has demanded payment from Dawn under the Loan Documents, but Dawn has failed and refused to make the required payments.

65.     As a result, Dawn is jointly and severally liable to Live Oak for the Indebtedness, which is a total amount of, as of August 25, 2025, $610,959.62, plus interest accruing thereafter, and plus fees, costs and attorneys' fees incurred.

## COUNT VII
## REPLEVIN

65.     Live Oak incorporates the preceding paragraphs as though fully set forth herein.

66.     The Security Agreement granted Live Oak liens and security interests in the Collateral, which Live Oak perfected.

67.     As a result of the Defendants' defaults under the Loan Documents described herein, Live Oak has the right to take possession of all Collateral described in the Security Agreement pursuant to Wis. Stat. §§ 810.01 *et seq*.

68.     On information and belief, no person may claim an interest paramount to the interest of Live Oak in the Collateral.

69.     The Defendants are wrongly detaining the Collateral.

70. The cause of the detention is unknown to Live Oak at the present time.

71. The Collateral has not been taken for a tax, assessment or fine, or seized under any execution or attachment against the property of the Defendants, or if so seized, that it is exempt from the seizure.

72. The value of the Collateral is less than Indebtedness due to Live Oak.

73. Live Oak is entitled to a judgment in replevin ordering the Defendants to turn over the Collateral to Live Oak, or its designees, to liquidate the Collateral, and to apply the proceeds of the sale, after costs and expenses, to the money judgment entered herein.

WHEREFORE, the Live Oak requests an order of the Court:

A. For judgment against the Defendants, jointly and severally, in the sum of, as of August 25, 2025, $610,959.62, plus interest accruing thereafter, plus fees, costs, and attorneys' fees incurred, and plus post judgment interest;

B. For the right of immediate possession of the Collateral; and

C. For such other and further relief as is just.

Respectfully Submitted,

STINSON LLP

Dated: September 12, 2025                    By: */s/ Benjamin J. Court____*
Benjamin J. Court (WI #1088634)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
benjamin.court@stinson.com

*ATTORNEYS FOR*
*LIVE OAK BANKING COMPANY*

15